06 CV 6937

JUDGE KOELTL

ALAN B. PEARL & ASSOCIATES, P.C.
Alan B. Pearl (AP-2409)
*Attorneys for Plaintiff*
6800 Jericho Tpke., Ste. 218E

Syosset, New York 11791
(516) 921-6645

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DEANNA WHARTON,

           Plaintiff,

  -against-

DUKE REALTY, LLP and THEODORE FURST
In his Individual and Corporate Capacities,

           Defendants.
-------------------------------------------------------------X

**COMPLAINT**

ECF CASE



Plaintiff, DEANNA WHARTON, ("PLAINTIFF"), by her attorneys ALAN B. PEARL & ASSOCIATES, P.C., complains of Defendants, DUKE REALY LLP ("DUKE") and THEODORE FURST ("FURST") (collectively, the "DEFENDANTS"), as follows:

### PLAINTIFF'S CLAIMS

1. This is an action to address violations of the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, the New York State Human Rights Law, N.Y. Executive Law § 296 ("NYSHRL"), and a state common law claim for breach of contract.

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(a) and 28 U.S.C. § 1331, and supplemental jurisdiction over the state claim pursuant to 28 U.S.C. § 1367.

3. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391, since all of the alleged acts took place in the Southern District of New York.

## PARTIES

4. At all times relevant to this complaint, PLAINTIFF was and still is a resident of Westchester County, New York.

5. At all times relevant to this complaint, defendant DUKE was, and upon information and belief, still is a domestic company doing business in Thornwood, Westchester County, New York.

6. Upon information and belief, at all times relevant to this complaint, defendant FURST was, and still is a resident of Westchester County, New York.

7. PLAINTIFF was an "employee" as that term is defined by 29 U.S.C. § 1002(6) of ERISA and the NYSHRL.

8. DUKE is an "employer" within the meaning of 29 U.S.C. § 1002(5) of ERISA and the NYSHRL.

9. Defendant FURST was an aider and abettor, within the meaning of the NYSHRL.

10. DUKE's pension and retirement plan is an "employee pension benefit plan" as defined in 29 U.S.C. § 1002(2A) of ERISA.

11. DUKE is the "plan sponsor" of its employee pension benefit plan as defined in 29 U.S.C. § 1002(16B) of ERISA.

12.     PLAINTIFF was a "participant" in DUKE's retirement plan as that term is defined by 29 U.S.C. § 1002(7) of ERISA.

## FACTUAL BACKGROUND

13.     PLAINTIFF was hired by the DEFENDANTS in or around July 1980 to work two days a week as a bookkeeper at a salary of approximately $6.00 per hour. Starting in 1990, PLAINTIFF worked 4 days a week, and continued at four days per week until she was terminated on February 7, 2006.

14.     PLAINTIFF was given ever-increasing responsibility during the time that she worked for the DEFENDANTS. Her title in 2005 was Financial Administrator. As of January 2005, PLAINTIFF's salary was $60,000 per year.

15.     In 1997, DEFENDANTS and PLAINTIFF entered into an agreement providing that DUKE would contribute money representing 25% of PLAINTIFF's salary into DUKE's pension and retirement plan (qualified fund 401K plan) for the purpose of PLAINTIFF's retirement benefits (hereafter the "1997 Benefits Agreement").

16.     DEFENDANTS and PLAINTIFF operated under the 1997 Benefits Agreement for many years, thereby ratifying and interpreting its provisions. The 1997 Benefits Agreement is, in part, a health and welfare plan.

17.     PLAINTIFF's job duties during the last five years of her employment were to perform all of DUKE's financial transactions, in addition to FURST's personal financial transactions. PLAINTIFF's job duties entailed payroll accounting, payment tax reports, pension plan accounting, administration of pension and medical plans, accounts payable, accounts receivable, banking – including account statement reconciliation, investment accounting, payment of both the corporate and FURST's personal taxes, lease preparations, monitoring of

lease renewals and tenants' option exercising, amongst other duties.

18. PLAINTIFF and FURST had a close working relationship over the course of her 26-year employment. FURST always told PLAINTIFF that she would be working for him for the rest of his life. That relationship was undermined during the last 3 years of PLAINTIFF's employment by jealously and harassment by FURST's wife, another DUKE employee, Dee Ferriss ("FERRISS").

19. On several occasions in 2003 and 2004, PLAINTIFF was made to feel that her position with DUKE was precarious due to FERRISS' influence. For example, each time that PLAINTIFF took time off for vacation she was faced with termination threats when she returned. This happened in March 2003, June 2004, and March 2005.

20. On one occasion, the reason given for the termination threat was because FERRISS claimed that PLAINTIFF was disabled and unable to work, although PLAINTIFF had no serious health issues and was perfectly capable of working.

21. In September 2005, PLAINTIFF returned from vacation and was confronted by Defendant FURST, who falsely accused PLAINTIFF of not being accessible during her vacation. It was readily apparent that DEFENDANTS were scheming to terminate PLAINTIFF, since they had changed the locks on PLAINTIFF's office door and desk.

22. After meeting with PLAINTIFF, and being reminded that PLAINTIFF was, in fact, accessible (she had left the hotel phone number and fax number), DEFENDANTS did not terminate her. Instead, FURST told PLAINTIFF she was doing a good job, that she was a loyal employee and that she would be working for him for the rest of his life.

23. FURST told PLAINTIFF that she deserved some job security. Therefore, he and the PLAINTIFF jointly discussed and prepared an employment agreement, which FURST signed

on September 13, 2005 (the "September 13, 2005 Employment Agreement"). The September 13, 2005 Employment Agreement provided that PLAINTIFF would remain employed by the DEFENDANTS, and receive the same benefits, including the retirement and health insurance benefits, for five years.

24. On January 24, 2006, the day before PLAINTIFF was to leave on a scheduled vacation, PLAINTIFF was asked to resign her employment. PLAINTIFF was not given any reason for the request. This caused PLAINTIFF to suffer great distress and anxiety.

25. On January 24, 2006, PLAINTIFF was presented with a release prepared by the DEFENDANTS' attorney and was asked to sign it. This signing of this release would have invalidated any prior agreement entered into between the PLAINTIFF and DEFENDANTS, including the 1997 Benefits Agreement and the September 13, 2005 Employment Agreement.

26. The release offered by DEFENDANTS stated that PLAINTIFF would receive $20,000 for giving up all rights to contest her termination. In return for signing the agreement, the DEFENDANTS stated that they would not contest PLAINTIFF's eligibility for unemployment insurance benefits. PLAINTIFF refused to resign her employment or sign the offered release.

27. On February 7, 2006, PLAINTIFF returned from her vacation. That day, DEFENDANTS terminated PLAINTIFF'S employment. DEFENDANTS' attorney offered PLAINTIFF the same release they had offered her on January 24, 2006, and stated PLAINTIFF should sign the release because it would "make it easy on you." PLAINTIFF was told she had 45 days to review the document.

28. The decision to terminate the PLAINTIFF was made by DEFENDANT FURST.

29. On February 7, 2006, PLAINTIFF was given no reason for her termination except

5

for the statement by DEFENDANTS' attorney, "you and Mr. Furst are going in different directions."

30. Following PLAINTIFF's termination, DEFENDANTS proceeded to contest PLAINTIFF's eligibility for unemployment insurance benefits as they had threatened to do when PLAINTIFF refused to sign the release offered to her on January 24, 2006 and February 7, 2006.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST DEFENDANT DUKE FOR VIOLATION OF SECTION 510 OF ERISA

31. PLAINTIFF repeats and realleges paragraphs "1" through "30" above as if more fully set forth herein.

32. The 1997 Benefits Agreement is a valid contract for the provision of retirement benefits to PLAINTIFF.

33. The September 13, 2005 Employment Agreement further ratified the 1997 Benefits Agreement, by stating that PLAINTIFF's current level of benefits would be maintained for at least five years.

34. Additionally, PLAINTIFF received health insurance benefits through DUKE and if not for her termination, would have continued to receive the health insurance benefits for at least five years as per the September 13, 2005 Employment Agreement.

35. By terminating PLAINTIFF in contravention of the September 13, 2005 Employment Agreement, DEFENDANT interfered with her rights to her pension benefits as governed by the 1997 Benefits Agreement and for continued health benefits coverage.

36. Pursuant to Section 510 of ERISA, 29 U.S.C. § 1140, DEFENDANTS' termination of PLAINTIFF was unlawful, since it was motivated, at least in part, by the

DEFENDANTS' desire to interfere with PLAINTIFF's entitlement to health benefits and benefits under the 1997 Benefits Agreement.

37. DEFENDANT's actions were intentional, willful, and done in reckless disregard of PLAINTIFF's legal rights as protected by ERISA.

38. PLAINTIFF has been damaged in an amount to be determined at trial for all benefits that PLAINTIFF was entitled to receive, as well as liquidated damages, interest and attorneys fees according to statute.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT DUKE FOR RETALIATION PURSUANT TO SECTION 510 OF ERISA

39. PLAINTIFF repeats and realleges paragraphs "1" through "39" above as if more fully set forth herein.

40. On January 24, 2006 and again on February 7, 2006, DEFENDANT threatened to challenge PLAINTIFF's entitlement to Unemployment Benefits for the express reason of coercing her to give up her rights under the September 13, 2005 Employment Agreement and the 1997 Benefits Agreement.

41. When PLAINTIFF refused to sign away her rights under these agreements, the DEFENDANT terminated her.

42. Following her termination, PLAINTIFF applied for unemployment insurance benefits and was denied same because the DEFENDANT had falsely represented to the New York State Department of Labor's Unemployment Insurance Division that PLAINTIFF was terminated for misconduct.

43. During the New York State Department of Labor's investigative process, DEFENDANT fabricated malicious lies regarding PLAINTIFF in order to effectuate a denial of unemployment benefits to PLAINTIFF.

44. PLAINTIFF contested the denial of her unemployment benefits. A hearing was held, and the Unemployment Insurance Appeal Board rendered a decision on August 3, 2006, that DEFENDANT could not support any of their assertions that PLAINTIFF had been terminated for misconduct.

45. Contesting PLAINTIFF's rights to unemployment benefits was unjustified, and was done by DEFENDANT purely in retaliation for PLAINTIFF's refusal to give up her asserted rights under the September 13, 2005 Employment Agreement and the 1997 Benefits Agreement.

46. DEFENDANT's actions were intentional, willful, and done in reckless disregard of PLAINTIFF's legal rights to be free of retaliation pursuant to Section 510 of ERISA, 29 U.S.C. § 1140.

47. PLAINTIFF has been damaged in an amount to be determined at trial for the cost of litigating the unemployment insurance determination, as well as liquidated damages, interest and attorneys fees according to statute.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT DUKE
TO RECOVER BENEFITS PURSUANT TO SECTION 502 OF ERISA**

48. PLAINTIFF reiterates and realleges paragraphs "1" through "48" above as if more fully set forth herein.

49. The 1997 Benefits Agreement is a valid contract for the provision of retirement benefits to PLAINTIFF.

50. The September 13, 2005 Employment Agreement further ratified the 1997 Benefits Agreement, by stating that PLAINTIFF's current level of benefits would be maintained for at least five years.

51. Additionally, PLAINTIFF received health insurance benefits through DUKE and if not for her termination, would have continued to receive the health insurance benefits for at least five years as per the September 13, 2005 Employment Agreement.

52. By terminating PLAINTIFF in contravention of the September 13, 2005 Employment Agreement, DEFENDANT interfered with her rights to her pension benefits as governed by the 1997 Benefits Agreement, and for continued health benefits coverage.

53. DEFENDANT's actions were intentional, willful, and done in reckless disregard of PLAINTIFF's legal rights as protected by ERISA.

54. PLAINTIFF seeks to recover the benefits owed to her under the September 13, 2005 Employment Agreement, pursuant to Section 502(a)(1) of ERISA, and has been damaged in an amount to be determined at trial for all benefits that PLAINTIFF was entitled to receive, as well as liquidated damages, interest and attorneys fees according to statute.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR BREACH OF CONTRACT

55. PLAINTIFF reiterates and realleges paragraphs "1" through "55" above as if more fully set forth herein.

56. PLAINTIFF and DEFENDANTS entered into a valid contract for employment, for a definite term, on September 13, 2005. The contract specified that benefits were guaranteed for at least five years.

57. DEFENDANTS breached the contract of employment by terminating

PLAINTIFF prior to the expiration of the term specified in the contract of employment.

58. As a result of DEFENDANTS' breach, PLAINTIFF has been damaged in the form of lost wages, bonuses, health insurance benefits and pension contributions as is more fully outlined in the September 13, 2005 Employment Agreement.

59. PLAINTIFF seeks reinstatement as well as damages for DEFENDANTS' breach of contract.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR AGE DISCRIMINATION IN VIOLATION OF THE NYSHRL

60. PLAINTIFF repeats and realleges paragraphs "1" through "60" above as if more fully set forth herein.

61. PLAINTIFF was qualified for the position that she held with the DEFENDANT DUKE and was performing her job in a satisfactory manner.

62. PLAINTIFF was over the age of forty years old at all times relevant to this complaint.

63. Upon information and belief, PLAINTIFF was replaced by a younger worker.

64. DEFENDANT FURST aided and abetted DEFENDANT DUKE in its discrimination towards PLAINTIFF.

65. PLAINTIFF was terminated from her position under circumstances giving rise to an inference of unlawful discrimination.

66. PLAINTIFF has been damaged in an amount to be determined at a trial of this action, and seeks damages, including compensatory and liquidated damages, damages for pain, suffering and anxiety, as well as reasonable attorneys fees and costs of this action.

67.     DEFENDANTS willfully and maliciously engaged in these discriminatory practices for no valid business reason.

## JURY DEMAND

68.     PLAINTIFF demands a jury trial on all issues.

**WHEREFORE**, PLAINTIFF respectfully requests that the Court enter judgment:

a.      On the First Cause of Action for violation of Section 510 of ERISA, for compensatory and liquidated damages, interest and attorneys' fees, in an amount to be determined at trial.

b.      On the Second Cause of Action for retaliation under Section 510 of ERISA, for compensatory and liquidated damages, interest and attorneys' fees, in an amount to be determined at trial.

c.      On the Third Cause of Action to recover benefits under Section 502(a)(1) of ERISA, for compensatory and liquidated damages, interest and attorneys' fees, in an amount to be determined at trial.

d.      On the Fourth Cause of Action for breach of contract, for reinstatement, as well as an amount sufficient to make PLAINTIFF whole for all sums she would have received but for the DEFENDANTS' unlawful breach of contract, including, but not limited to, wages, bonuses, and all lost benefits, in additional to counsel fees and disbursements in a sum not less than $375,000.00.

e.      On the Fifth Cause of Action for violation of the New York Human Rights Law, for monetary damages in the form of lost wages and benefits, front pay, damages for mental anguish and humiliation, as well as reasonable attorneys fees and costs of this action, in an

amount to be determined at trial in a sum not less than $250,000.00.

Dated: Syosset, New York
      August 28, 2006

ALAN B. PEARL & ASSOCIATES, P.C.

By: _____
    Alan B. Pearl (AP-2409)
*Attorneys for Plaintiff*
6800 Jericho Tpke., Suite 218E
Syosset, New York 11791
(516) 921-6645